**In re ILLINOIS POWER CO. et al.**

**Civ. No. 1033.**

District Court, D. Delaware.

Oct. 27, 1947.

Harry G. Slater and Joseph Auerbach, both of Philadelphia, Pa., for Securities and Exchange Commission.

Stoddard M. Stevens, Houston H. Wasson, Gray Thoron, and John G. Dorsey (of Sullivan & Cromwell), all of New York City, for North American Co.

Caleb S. Layton (of Richards, Layton & Finger), of Wilmington, Del., and Clayton E. Kline, of Topeka, Kan., for North American Light & Power Co.

George Rosier, of New York City, for Carl J. Austrian and Robert G. Butcher, Trustees of Central States Electric Corporation, Blue Ridge Corporation, and American Cities Power & Light Corporation, Common Stockholders of North American Company.

Percival E. Jackson, of New York City, for Common Stockholders of North American Light & Power Co.

Lawrence R. Condon and Ellen E. O'Neil, both of New York City, for Nellie D. Walters and others.

David Advocate, of New York City, for Samuel H. Mehlman.

Louis Braun, of New York City, for William M. Dederick, a Stockholder.

318

LEAHY, District Judge.

Court approval for the second part of Plan I of the North American Company under § 11 of the Public Utility Holding Company Act, 15 U.S.C.A. § 79K, is sought. The details and background of the plan are extensively set forth in the Findings and Opinion of the Securities and Exchange Commission in Holding Company Act Release No. 7514, and will not be repeated here. A part of Plan I providing for the settlement of inter-company claims with Illinois Power Company, a subsidiary, was approved without opinion by this court on May 28, 1947 (Civil Action 1033). That portion of Plan I here for consideration provides for the liquidation of North American Light & Power Company, another subsidiary of North American. This calls for a termination of claims between North American and Light & Power. Under this phase of Plan I Light & Power's public preferred stockholders will be paid in cash their charter dissolution preferences which as of January 1, 1947 amounted to $187 a share; and the public common stockholders will receive ⁹⁄₁₀ths of a share of the common stock of Illinois Power Company or at their option for a limited period, $7.50 a share. North American is to advance to Light & Power the cash to make these payments. After such payments North American, as Light & Power's sole remaining stockholder, will receive in dissolution all the remaining assets.

■ 1. One group objects that the plan is unfair because it fails to fix a time for payment of the preferred. The argument is that the preferred should not be compelled to stand by awaiting the conclusion of disputes between North American and public common stockholders and thus run the risk of a decline in the value of Light & Power's assets which might prevent payment to the preferred of the full amount of their claim. This objection is without merit. The SEC in its Findings and Opinion specifically reserved jurisdiction on this point and stated that if protracted litigation should occur over the issue of inter-company claims it would seek to sever the plan so as to permit immediate payment of the public preferred without awaiting the final determination of the dispute over the

payment of the public common. Under these circumstances, I agree with the Commission that this aspect of the plan is fair and equitable.

■ 2. The second objection comes from another group representing the preferred. They argue that where dividends have been withheld and funds available for payment of such dividends have been used for the reduction of interest charges—ultimately for the benefit of the common—the preferred on liquidation and dissolution should be reimbursed (in addition to its liquidation charter preferences, i. e., par plus accrued dividends) by receiving its "call" or "redemption" price. I think the plan as it affects the preferred is fair and equitable in giving to that class its charter preferences on dissolution. There has not been sufficient showing that in addition the preferred should receive its call price. Perhaps there might be a situation where such payment would be fair as to such securities, but this is not it. Moreover, the record is far from clear the preferred has been abused for dividend failure.

3. The remaining objection is urged by Light & Power's common stockholders. There is no challenge there was not substantial evidence to support the findings of the SEC. The point of argument is that the Commission failed to give consideration to and adjudicate the questions of validity and the extent of North American's claims against Light & Power and vice versa; that is, it made no distinction between North American's security claims and the extent to which such claims should be subordinated for alleged wrongs done by the parent to its subsidiary.

■ Before examining the inter-company claims the SEC placed a value of $5.50 a share on the common as representing a pari-passu break-up value and using this as a mid-point then turned to the claims. Obviously the Commission did not take each claim and adjudicate its worth as a judge does in a traditional lawsuit. Behind the claims were multifarious and complex facts which might or might not support subordination. The problem, at bottom, called for a practical adjustment. This approach received the approval of Judge Biggs in this court in In the Matter of Midland United

Co., D.C.Del., 58 F.Supp. 667, and also by Judge Goodrich in Ladd v. Brickley, 1 Cir., 158 F.2d 212, certiorari denied 67 S.Ct. 675. This also was the approach I adopted in United Gas Corporation, D.C.Del., 58 F. Supp. 501. There, as here, were involved complex issues as to the validity and rank of the parent's claim against its subsidiary —potential lawsuits. In both instances there could be no true arm's-length bargaining in arriving at a settlement and compromise. The best that could be accomplished was to take the proposed settlement as an offer by the parent to the public security holders of the subsidiary. The Commission itself in the instant case suggested a figure which it concluded fell within the reasonable range of fairness. It was this or a complete and final adjudication the outcome of which no one had prescience enough to foretell; and an examination of Light & Power's claims disclosed latent flaws. There was an absence of a finding of the investment value of the preferred. Under the present state of the law, I would not approve for the preferred a higher figure than that allowed by the Commission, even though present investment value warranted it, because I think there are other factors which will overcome the effect of such an investment value figure; in itself it is, in turn, only one of many factors to be considered. However, in its ultimate conclusions I think the Commission has found a fair and equitable plan. After careful study of the proceedings I approve the action of the SEC in finding that the treatment afforded by the plan in a fair and equitable fashion compensates all the various classes of security holders, taking into consideration all their conflicting rights and claims. This conclusion is reached upon my independent examination and not on the basis of accepting the findings of the Commission (because supported by substantial evidence) because I do not believe that the appraisal of potential lawsuits and what a judge would most likely decide are matters within the expert competence of the Commission, even assuming a § 11(e) court is bound by the substantial evidence rule.

An order providing for adoption of the Findings and Opinion of the Commission and for approval may be submitted.